Danny **KINLEY** and wife, Sharon Kinley, Appellants,

v.

**TENNESSEE STATE MUTUAL INSURANCE COMPANY, INC., Appellee.**

Supreme Court of Tennessee, at Knoxville.

Aug. 10, 1981.

Robert J. Jessee, Johnson City, for appellants.

Clyde E. Willis, Rogersville, for appellee.

## OPINION

FONES, Justice.

Plaintiffs were awarded a recovery in the trial court under the windstorm coverage of their homeowner's policy issued by defendant. The Court of Appeals held that the two witnesses offered as experts to establish that the damage to their home was caused by windstorm, were not qualified, and that without their testimony there was no evidence to support their claim, and the suit was dismissed. We granted a T.R.A.P. Rule 11 appeal to consider the competence of plaintiffs' witnesses as experts and if incompetent whether dismissal or a new trial was the appropriate disposition. We agree that plaintiffs' witnesses were not qualified to give opinion evidence upon the particular subject of inquiry involved here, to-wit whether or not a windstorm caused sections of cinder block foundation walls to collapse. The error of the trial court in admitting and relying upon unqualified expert evidence requires reversal and remand for a new trial.

Plaintiffs' house was built on a lot that sloped rather sharply down to Boone Lake. During a rain and wind storm on August 3, 1978, most of the front wall and one side wall fell into the basement. All four corners and the other two walls remained and kept the house stabilized until the portions of the walls that fell were rebuilt. The two walls that fell were earth-bearing, or earth-retaining walls standing 8' 4" vertically between the concrete floor slab and the wood frame floor above, with the outside of said walls subjected to earth pressure to almost full height. The two walls that remained undamaged had no lateral earth pressures. The walls were constructed of 8" thick hollow core concrete masonry units. There were no walls or partitions or bar reinforcements bracing the walls. The cores of the masonry units were not filled with concrete or mortar. The walls were not anchored to the concrete floor slab nor to the wood frame floor that rested on top of them.

It was plaintiffs' contention that two large trees, 2½ to 3 feet in diameter at the base and the 100 to 150 feet in height swaying to and fro in the strong wind that accompanied the rain storm, caused the walls to collapse. An open wooden deck on the house overlooking the lake was built around one of the trees and at the time of the storm the witnesses said that the circumference of the hole in the deck allowed six inches of clearance around the trunk of the tree. The deck was approximately eight feet above the ground level. The

other tree stood about 3 to 3½ feet from the side wall that collapsed. The witnesses plaintiffs offered as experts were of the opinion that the deck tree swayed against the deck floor frame that was "fastened to the upstairs floor that set in motion a vibration that shook loose the mortar binding the concrete masonry units, causing them to fall;" that the wind "blowing up against the other tree . . . cause[d] vibration there at the roots" and "work[ed] the ground a little."

Defendant's expert witness was a well-qualified structural engineer. In brief, it was his opinion that the walls were not properly constructed to resist the lateral earth pressures; that an eight inch hollow core masonry unreinforced wall was insufficient to withstand the stresses produced by earth and hydrostatic pressure throughout its height.

## I.

Plaintiffs' first witness tendered as an expert was Dillard Kinley, father of plaintiff Danny Kinley. The father and son were in the construction business together and they jointly supervised the construction of plaintiffs' house. Dillard Kinley had been building houses since 1947, and in his busiest year had built one hundred ten FHA pre-fab houses. He had a tenth grade education, no engineering background and denied any knowledge of engineering specifications or manuals on the subject of foundation walls subject to lateral earth stresses. He merely insisted that most of the houses he had built, and that others had built in the area, were constructed upon eight inch hollow core masonry units.

Plaintiffs' second expert witness was Homer Price. His qualifications consisted of six years' experience as an estimator for one general contractor and three years with another, five years as an outside salesman for a lumber company, and an unspecified time as an insurance adjuster, estimating fire damage to buildings. His formal education consisted of one year of college and auditing night school courses in industrial arts. He admitted that he had no training

or education in the area of structural stresses or lateral earth pressures upon foundation structures. Like Mr. Kinley, he merely expressed the opinion that the wind acting on the trees caused the house floor to vibrate and the ground near the side wall to shake and the combination brought down the walls.

The pictures introduced taken after the collapse show the two trees standing erect and apparently undamaged and do not show any soil movement at the base of either tree of such significance that a person of ordinary experience might validly express an opinion that a heavy wind load on the two trees would likely cause structural damage to the house. Both of plaintiffs' witnesses call attention in the pictures to the fact that there is a scar on the bark of the tree at the level of the deck flooring. That is true, but it is such a slight scar that it is perfectly obvious to the nonexpert that the trees had barely touched the deck flooring.

■ To give expert testimony, one must be particularly skilled, learned or experienced in a science, art, trade, business, profession or vocation, a thorough knowledge of which is not within the scope of the common knowledge and experience of the average person.

■ Whether or not expert testimony is necessary is generally determined by the subject matter of the inquiry before the Court. Here, the issue was, Did the wind storm cause the walls to collapse? A failure of building structures that are said to have been subjected to the stresses of lateral earth pressures on the one hand and tree vibrations and ground vibrations on the other hand presents an issue beyond the scope of the common knowledge and experience of the average person and obviously calls for an expert in the field of structural engineering.

Neither of plaintiffs' witnesses had any experience, skill or learning in that profession, and both expressly disclaimed any knowledge of the effect of stresses and transmission of forces on building structures.

The trial judge has broad discretion in determining the qualification of experts but we agree with the Court of Appeals that the trial court was in error in finding Kinley and Price were qualified to render an opinion as to the cause of this structural failure. Their lack of qualification is not debatable. *See Shelby County v. Barden*, 527 S.W.2d 124 (Tenn.1975); and *Alves v. Jones*, 577 S.W.2d 204 (Tenn.App.1978).

## II.

Over the strenuous objection of defendant, the trial judge found that experience in home building and estimating construction costs qualified plaintiffs' witnesses as experts on structural failure, and he accorded their testimony greater weight than that of the structural engineer. Under those circumstances, plaintiffs had no reason to present a structural engineer as an expert. They relied upon the trial judge's error in overruling defendant's objection, whereas if he had ruled correctly they would have had an opportunity to request a continuance or take a non-suit for the purpose of seeking a qualified expert who would support their position. It is in accord with the general rule to remand for a new trial where the judgment of the trial court is reversed because it was predicated upon inadmissible evidence and it appears that admissible evidence on the same issue may be available. Cf. *West Tennessee Motor Express, Inc. v. Tennessee Public Service Commission*, 514 S.W.2d 742, 747 (Tenn. 1974).

The judgment of the Court of Appeals is affirmed in part and reversed in part and the case is remanded to the Chancery Court of Sullivan County for a new trial. The costs will be assessed against defendant.

HARBISON, C. J., and COOPER, BROCK and DROWOTA, JJ., concur.